**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Tel: (619) 325-0492
Fax: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff SUSAN A. PITT,
Individually, as Successor-In-Interest to MICHAEL A.
PITT, Decedent, on Behalf of the Estate of
MICHAEL A. PITT, and on Behalf of the Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN A. PITT, Individually, as Successor-In-Interest to MICHAEL A. PITT, Decedent, on Behalf of the Estate of MICHAEL A. PITT, and on Behalf of the Class, <br><br> Plaintiff, <br><br> vs. <br><br> GENERAL AMERICAN LIFE INSURANCE COMPANY, a Missouri Corporation; METROPOLITAN TOWER LIFE INSURANCE COMPANY, a Delaware Corporation; and METLIFE GROUP, INC., a New York Corporation <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> **(1) DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF;** <br><br> **(2) BREACH OF CONTRACT;** <br><br> **(3) BAD FAITH;** <br><br> **(4) VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200, et. seq.** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff SUSAN A. PITT, Individually, as Successor-In-Interest to MICHAEL A. PITT, Decedent, on Behalf of the Estate of MICHAEL A. PITT, and on Behalf of the Class, make the following allegations against Defendants GENERAL AMERICAN LIFE INSURANCE COMPANY, a Missouri Corporation ("GALIC"); METROPOLITAN TOWER LIFE INSURANCE COMPANY, a Delaware Corporation ("TOWER") and METLIFE GROUP, INC., a New York Corporation ("METLIFE") (collectively, "Defendants") as follows:

## I.    NATURE OF THE CASE

1.    Defendants refuse to comply with mandatory provisions of the California Insurance Code as well as California common law regulating the lapse and termination of life insurance policies.

2.    Since January 1, 2013, Defendants have systematically and purposely failed to provide certain classes of policy owners proper notices of pending lapse or termination.  Defendants have refused to provide required grace periods.  They have also failed to notify thousands of policy owners of their right to designate someone to receive critical notices and information regarding life insurance, despite being required to do so on an annual basis. All of these important safeguards are required by, among other sources, California Insurance Code Sections 10113.71 and 10113.72.[1]

3.    As a result, Defendants have failed to properly evaluate and pay claims to beneficiaries for policies improperly lapsed or terminated.   Indeed, thousands of policy owners have lost the benefit, value and security of their life insurance, have been forced into unnecessary reinstatements, and in many instances have lost all reasonable access to any insurance at all. Ultimately, Defendants have robbed thousands of their beneficiaries of policy benefits. Moreover, since January 1, 2013,

---

[1] Unless otherwise stated, all references to "Section 10113.71" and/or "10113.72" refer to California Insurance Code Sections 10113.71 and/or 10113.72. Sometimes these will be collectively referred to as the "Statutes."

Defendants have become aware of their previous failures and have failed to take corrective action.

4.     These mandates of California law and the California Insurance Code were put into place to protect Californians and others, primarily seniors and the ill. These Statutes were designed to prevent or lessen the possibility of unintended or uninformed loss of valuable and necessary life insurance for just one missed payment. The Statutes were written to codify existing law regarding lapse and termination of life insurance, requirements requiring strict compliance with applicable law and policy provisions before termination of coverage is effective. The Statutes were also intended to standardize the procedures used in all life insurance when a policyholder fails to make a premium payment and when an insurer attempts to apply provisions of the policy that allow for lapse and termination.  These rules are also consistent with the strong public policy of the State to give all policy owners and insured mechanisms to allow for secondary notices of lapse and termination.

5.     These Statutes were also designed specifically to deal with the unique nature of life insurance.  When a potential claim for benefits arises, the policy owner and party responsible for payment of premiums is often the insured, and due to their death, is no longer available to explain the circumstances related to any potential lapse or termination of coverage.  The Legislature also recognized that the beneficiary is often unaware of the circumstances related to any lapse of coverage. Rather, the insurer is fully in control of the documentation and requirements for termination of coverage.  As such, California requires strict compliance with all statutory and contractual provisions governing termination of an otherwise in-force policy regardless of the nonpayment of premium.

6.     Plaintiff is a victim of Defendants' failures.  She and her decedent's Estate bring this action to recover for the injuries and damages suffered resulting from these violations not only in their individual capacities, but also on behalf of

numerous California policyholders and beneficiaries who have also been denied the benefits of California law.  In addition to an award of policy benefits, Plaintiff also requests injunctive relief intended to ensure Defendants' future compliance with these important consumer safeguards and to the greatest extent possible rectify or cure the effects of past failure to comply.

## II.    PARTIES

7.    Plaintiff SUSAN A. PITT is an individual and widow of Plaintiff's Decedent MICHAEL A. PITT.  Plaintiff is and has been a resident of California since 2014.

8.    MICHAEL A. PITT was Susan's husband.  He died in California on May 23, 2018. At the time of his death and at all times relevant herein, Mr. PITT was a California resident.

9.    Plaintiff pursues these claims and causes of action individually, on her own behalf as the sole beneficiary of the subject Policy; as Executor of the Estate of MICHAEL A. PITT, pursuant to California Code of Civil Procedure Sections 377.30, *et seq.*; as Decedent's successor-in-interest, in compliance with California Code of Civil Procedure Section 377.32; and as the Class representative.  Filed herewith and incorporated hereto by this reference is Plaintiff's Declaration pursuant to California Code of Civil Procedure Section 377.32.  Plaintiff pursues these claims to the extent they are not held by Mr. PITT.  For purposes of this litigation, the Estate of MICHAEL A. PITT is considered a citizen of the state of California.  In each of these capacities, Ms. SUSAN A. PITT also pursues these claims on behalf of all others similarly situated as against Defendants herein.

10.    Defendant GALIC is a Missouri Corporation. GALIC is licensed to conduct business and does business throughout the State.  GALIC is a wholly-owned subsidiary of defendant METLIFE.

11.    Defendant TOWER is a Delaware Corporation, engaged in business involving the sale and administration of life insurance.  TOWER is licensed to

conduct business and does business throughout the state of California.    Plaintiff is informed and believes that TOWER at some time prior to the filing of this action merged with, absorbed, or otherwise assumed responsibility for Policies sold by GALIC, including the Policy sold to Mr. PITT.    Plaintiff is informed and believes that GALIC may be sharing and utilizing TOWER's license to continue to do business in the State of California.

12.    Defendant METLIFE is a New York Corporation, doing business and transacting the business of insurance throughout the State of California and is, amongst other things, an insurance holding company which owns and controls insurance companies, including GALIC, TOWER, as well as those companies hereinafter described as "Affiliated Companies."    GALIC, TOWER, and the "Affiliated Companies" include those life insurance companies doing business in the State of California as part of NAIC GROUP #0241, which are involved in the sale, issuance, and delivery of life insurance products and policies in the state of California.    At all times relevant herein, METLIFE manages, owns and controls how GALIC and TOWER as well as the Affiliated Companies apply California regulatory laws and authority, including the California Insurance Code, relating to life insurance governed by the laws of California.  At all times herein METLIFE is governed by the laws and regulations of the State of California regarding its ownership, supervision, and administration of GALIC, TOWER and the Affiliated Companies.

13.    Plaintiff is informed and believes and on that basis alleges that, now and at all times herein mentioned, each Defendant was and is the agent, employee, employer, servant, representative, partner, and/or co-venturer of each of the other Defendants and was acting and is acting within the scope of such authority and relationship and with the knowledge, approval, consent, and ratification of the other Defendants, as applicable as to each of the transactions, events, or other matters described here.

### III.    JURISDICTION AND VENUE

14.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000, and is between citizens of different States.

15.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. Section 1391(b) through (d), because each Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; does substantial business in this District; and is subject to personal jurisdiction in this District.

### IV.    THE ENACTMENT AND APPLICABILITY OF INSURANCE CODE SECTIONS 10113.71 AND 10113.72

16.    In 2012, after extensive and open hearings and public consideration, including all major insurance companies doing business in the State, the California Legislature and Governor enacted California Insurance Code Sections 10113.71 and 10113.72, which instituted procedural requirements regulating the termination and lapse of life insurance policies.  The Statutes were written to avoid unintended forfeitures of life insurance policies primarily being suffered by the elderly and the ill.  The Legislature found that there was a significant problem in California with the elderly and the ill in the loss of insurance due to the failure to pay insurance premiums leading to the abrupt loss of coverage that had been paid for many years.

17.    These Insurance Code provisions, in addition to other statutory provisions and laws in effect as of January 1, 2013, mandate that every life insurance policy in California, including policies that have renewed in the State, shall contain a 60-day grace period, and that the policy shall remain in force during the grace period. Cal. Ins. Code § 10113.71(a). The provisions further required that before an individual life insurance policy is lapsed for nonpayment of premium, a thirty-day written notice of pending lapse or termination must be mailed not only to the policyholder, but also to any individual who had been designated to receive

such notice, as well as any person having any interest in the policy.  Cal. Ins. Code § 10113.72(c).  The insurance company also has to, on an annual basis, notify the policy owner of his or her right to designate other notice recipients.

18.    Section 10113.71, as enacted, reads as follows:

**§ 10113.71 Grace Period; Notice of pending lapse and termination of policy; Mailing requirement**

(a)  Every life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United Sates mail within 30 days after a premium is due and unpaid.  However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 states:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in

addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

19.   These Statutes are regulatory in nature and contain no grandfather provisions limiting the application of the statutes only to policies issued or delivered after January 1, 2013. These provisions were intended to standardize the procedures and notices utilized by life insurers to terminate policies.  The Statutes further codified long-standing California law and policy regarding the State's desire to protect policyholders and beneficiaries from loss of insurance resulting from the failure, e.g., to pay a single premium after years of timely payments. These provisions, individually and collectively, were intended to apply to policies in force as of January 1, 2013 and thereafter, including those policies that would come within the jurisdiction of the State and regardless of the date of any original issuance.

20.   Importantly, the Statutes expressly provided that no individual life insurance policy would lapse or terminate for "nonpayment of premium" unless there was compliance with all the mandated provisions set forth in the Statutes. California law requiring strict compliance does not relieve or excuse a policyholder's obligation for the payment of premium, but rather mandates that until such notices and procedures are followed, the policy does not lapse, does not

terminate, and remains in force.  The Statutes also do not include any language or indication that substantial compliance with the requirements is adequate.

21.    The principal supporters of the legislation were groups representing the interests of the elderly and the retired as well as constituents dealing with health concerns. There was no substantive opposition to the legislation during its drafting. Rather, the insurance industry supported these new provisions and accepted that the goal and purpose of the legislation was legitimate and in the best interest of their policyholders and beneficiaries.  There was never a public or private dispute that the enactment of provisions codifying a contractual right to a thirty-day written notice, a sixty-day grace period, and an annual right to designate was within the proper exercise of California's regulatory authority.  After repeated review, it was determined that enactment of these provisions would have no substantial fiscal or economic ill effect.  It was determined that these Statutes support a strong public policy to safeguard consumers' investment in life insurance, and the safety blanket that the insurance provides.

## V.    **DEFENDANTS' VIOLATIONS OF LAW**

22.    In 2012, Defendants and each of them, were made fully aware not only of the drafting and enactment of these provisions, but through their own lobbying groups and regulatory advisors, understood how and in what fashion the statutes would apply.  Prior to enactment, Defendants made no attempt to object to the enactment of the Statutes.

23.    Despite knowledge of the Statutes and their mandates, since January 1, 2013, Defendants have failed to comply with the Statutes.  Plaintiffs are informed and believe Defendants justify their failures by citing the issue or delivery date of the policy (to the extent the policy was first written before January 1, 2013), the state of original issuance (to the extent the policy was first issued outside of California despite, e.g., being renewed in California), or delivery of the policy, or other irrelevant factors.

24.    The failure of Defendants to comply with these provisions has resulted in, amongst other impacts, the improper lapse, termination and/or forced reinstatement of policies, the loss of the capacity of policyholders to be insured, the denial of actual claims, and the loss of millions in insurance benefits.  Plaintiff, as a beneficiary and as a representative of the Estate of Mr. Pitt, has suffered various forms of injury and loss including injury from an improper lapse, improper requirement of reinstatement and termination, and from Defendants' failure to reinstate Mr. Pitt's coverage.

25.    Plaintiff is informed and believes that the failure of Defendants to comply with these statutes as well as the resulting injuries and damages continue to this day.

## VI.    PLAINTIFF'S POLICY, LAPSE, TERMINATION, REINSTATEMENT AND DENIAL OF HER CLAIM

26.    In October 2003, MICHAEL A. PITT purchased a $2,000,000 term life insurance policy (the "Policy") for the protection of his family.    MICHAEL A. PITT ("Mr. PITT") was the husband of Plaintiff and he named Plaintiff as the sole beneficiary of the policy. The premiums paid in the purchase and maintenance of the policy were from the assets of the marriage of Plaintiff and Mr. PITT.

27.    A copy of what Plaintiff believes is a full and correct copy of the Policy is attached as Exhibit "A."   Under its express terms, the Policy incorporated and was required to comply with the applicable State law governing the policy. At all times relevant here, the Policy incorporated applicable law found in the California Insurance Code consistent with the provisions of California Insurance Code Section 41. The provisions of the Policy requiring compliance with the laws of the applicable state are consistent with California law as it existed during all relevant times stated herein.  As of the date of enactment, these provisions were individually and collectively read into every in-force life insurance policy within

the jurisdiction of California and thereafter were read into every in-force life insurance policy which thereafter came within the jurisdiction of California.

28.     The Policy is described as a "Level Benefit Term Life Insurance Annually Renewable to Age 95." The face amount of the policy was $2,000,000 and the annual premium owed was guaranteed for 20 years from the date of issuance. The "total Premium Payable at Annual Intervals" was $7,290.00. The "Initial Term" of the policy was one year and ran until October 6, 2004, after which time the Policy renewed each year. The Policy set forth the premiums due for renewal of the policy each year between the date of issuance until the insured reached the age of 95.

29.     The Policy, as originally issued, provided a "grace period" of thirty days and stated in pertinent part: "Your premium is in default if you do not pay it on or before its due date. We will allow a grace period of 31 days after the premium due date for payment of each premium except the first. A notice will be sent to you, at your last known address and any assignee of record. During this period no interest will be charged on the premium due, and the policy will remain in force. If the insured dies during the grace period, the amount of any unpaid premium due through the date of death will be deduced from the proceeds of the policy. If any premium remains unpaid after the grace period, this policy will cease and become void." See Exhibit "A." The policy had a Date of Issue of October 6, 2003. The Policy specified that it was to renew each year without proof of insurability and that each "renewal will be a term of one year and will begin when the preceding term ends."

30.     In 2003, when the Policy was initially issued, Plaintiff and Mr. PITT were residents of the State of Illinois. Plaintiff and Mr. PITT remained residents of Illinois through each subsequent yearly renewal until 2014 after the Plaintiff and Plaintiff's Decedent moved to California and became permanent residents of the

State of California and began to make premium payments to Defendant from the State of California.

31.    As of at least 2014, when the Policy was renewed, and in 2015 and in 2016 and until today, the laws and regulations of the State of California governed the Policy pursuant to the terms of the policy as well as the laws of the State of California.

32.    In 2014, Mr. PITT notified GALIC in writing of his new residence and mailing address.  Thereafter, through 2014 and through his death in 2018, Mr. PITT and Plaintiff communicated in writing with and paid premiums to GALIC from California.  From 2014 until the present, neither Plaintiff's Decedent, Plaintiff, nor GALIC undertook any transactions related to or in the State of Illinois.  At no time did any of the laws of the State of California conflict with the Policy with the exception that the Policy as originally issued contained a 30-day grace period, whereas as of January 1st, 2013, all policies governed by California law would require a 60-day grace period.  Utilization of a 30-day written notice provision or an annual right to designate did not conflict with any term of the Policy, but rather, was consistent with the Policy obligation to give written notice prior to lapse.

33.    From 2014 through the present, Plaintiff and Mr. PITT lived and owned property in California and have in all ways maintained the Policy and interacted with Defendants from within California.  As of Plaintiff's and Mr. PITT's change of residence to California, the State of Illinois ceased having any interest in the subject Policy, including no interest in the procedures and regulation regarding how the Policy was maintained, lapsed, or terminated.  In short, at all times from at least 2014, the Policy and the rights of the parties under the Policy were governed by the laws of California.

34.    Plaintiff is informed and believes that from January 1, 2013 until the present, Defendants have, as to certain categories of policies, failed to comply with the provisions of Sections 10113.71 and 10111.72.  At no time during 2014, 2015,

2016 or 2017 was Mr. PITT advised in any fashion of his right to designate, of his right to a 30-day notice prior to any effective lapse or termination, or that his policy contained a 60-day grace period.   Rather, at various times, Defendants misstated the actual form and type of notice required by law and the terms of the policy, and misinformed Plaintiff and Mr. PITT about the actual grace period in effect. Defendants also withheld and concealed from Plaintiff and Mr. PITT the right to designate and Defendants' previous failure to comply with those provisions. Plaintiff is informed and believes that these failures were part of a general business practice of GALIC of ignoring and misapplying Sections 10113.71 and 10113.72.

35.   Plaintiff is further informed and believes that irrespective of the application of the provisions of Sections 10113.71 and 10113.72, GALIC systematically failed to comply with the terms of the Policy promising a default notice prior to terminating the policy at the end of the contractual 31-day grace period.

36.   In January of 2016, after making premium payments consistently for more than 12 years, Plaintiff believes Mr. PITT may have failed to make the one quarterly payment due on January 6, 2016. At this time, Mr. PITT was 67 years old and had begun to suffer from a progressive medical condition which would soon take his life.  Prior to this time, GALIC customarily provided written notices of premiums due.  But Plaintiff has no record of her or her husband receiving such notices for 2016.   Prior to the filing of this suit, Plaintiff requested that GALIC and METLIFE provide such information, but GALIC and METLIFE have produced no evidence of any mailings to Mr. PITT preceding the January 2016 due date.  As such, Plaintiff is informed and believes that no notice was mailed to Mr. PITT prior to the January due date.

37.   On or about February 7, 2016, GALIC terminated the Policy for non-payment of premium. Internally, and as verified in subsequent correspondence to Plaintiff and Mr. PITT, Defendants treated the Policy as no longer being in force as

of February 7, 2016, and as having lapsed on January 6, 2016. Had Mr. PITT died after February 7, 2016, Plaintiff is informed and believes that any claim for benefits under the Policy would have been denied on the grounds the Policy was not in force and had been terminated prior to the insured's death.

38.    Prior to February 7, 2016, GALIC had not in any fashion complied with or attempted to comply with the provisions of Sections 10113.71 or 10113.72. Defendants had not provided any notice of pending lapse or termination. No notice was provided either for the lapse of the policy on January 6, 2016 or the termination of the Policy on February 7, 2016. GALIC also had not honored or given a 60-day grace period as required by Section 10113.71(a). Rather, Defendant terminated the policy half way through the mandatory 60-day grace period. This termination not only violated the terms of the statute, but also constituted a material breach of the contract. Prior to February 7, 2016, Defendants also violated Section 10113.72 by failing to provide notice of a right to designate. Due to each and every violation of these Statutes, the lapse and termination of the Policy was void and ineffective. Defendants failed to substantially or strictly comply with any of the mandates of Sections 10113.71 or 10113.72.

39.    GALIC also failed to comply with the express terms of its own Policy. Irrespective of the requirements of Sections 10113.71 and 10113.72, the Policy expressly required contractual notice regarding the running of any Grace Period. GALIC did not strictly or substantially comply with the express provisions of the Policy.

40.    Each of GALIC's violations were material violations of law and material breaches of the Policy, thereby excusing any further performance by Mr. PITT of tendering premiums to maintain the Policy in force. Each of Defendants' breaches and failures excused Mr. PITT from any obligation to seek or accept any form of reinstatement. GALIC was in breach and remained in breach of the Policy at all times from at least February 7, 2016 until Mr. PITT's death. As a result of

1  each and every violation, there was harm and injury to Mr. Pitt as well as,
2  ultimately, Plaintiff.

3          41.    Defendants will claim that sometime on or after February 7th, 2016,
4  Mr. PITT received a "Special Courtesy Offer" from GALIC advising that the policy
5  had already lapsed and was terminated.  The manner and mode of this transmission
6  is unknown at this time.  If sent at all, this notice nonetheless was erroneous.  It
7  inaccurately advised Mr. PITT that the Policy had lapsed on January 6, 2016 when
8  in fact it had not lapsed or terminated at all. This notice inaccurately advised Mr.
9  PITT that the grace period had expired, even though the mandated 60-day grace
10 period had not yet expired. These notices were ineffective and did not satisfy
11 Sections 10113.71 or 10113.72.

12         42.    The Special Courtesy Offer also violated the terms of the Policy and
13 purported to act as some form of modification of the Policy. The Special Courtesy
14 Offer did not explain the full ramifications of accepting the Offer.  Accepting the
15 Offer would have modified the Policy and required Mr. PITT to pay premiums for a
16 period of time when – according to GALIC – there was no insurance in effect.
17 Acceptance of the Special Courtesy Offer would have been considered by
18 Defendants as a "reinstatement" of the Policy, thus granting GALIC certain rights
19 or benefits it would not normally be entitled to.  For instance, pursuant to Insurance
20 Code Section 10113.5(a), upon the acceptance of the Special Courtesy Offer,
21 GALIC would have gained the right to contest payment of any policy benefits for a
22 period of two years.  As of 2016, the Policy had been in force for more than two
23 years and thus any claim for benefits would not have been subject to any right to
24 contest payment.   GALIC never explained the effect of accepting the Special
25 Courtesy Offer to Plaintiffs.  This process of offering a "Special Courtesy Offer"
26 was a process uniformly deployed to all class members and policy owners during
27 this time.

28

43.    Defendants' Special Courtesy Offer, stating that Mr. Pitt could reinstate the policy if his premium was paid by February 27, 2016, was also parol to the terms of the Policy and did not excuse or satisfy any mandatory provisions of the Policy or the law.  At no time was Mr. PITT contractually or otherwise under any duty to accept such offer.  Had Mr. PITT accepted the Courtesy Offer, the reinstated policy would have been of lesser value and worth.

44.    GALIC demanded that the Pitts accept the Special Courtesy Offer by February 27, 2016.  Despite a request for all documentation regarding any communications between GALIC and Mr. PITT, GALIC has provided no proof of mailing or any documentation concerning the Special Courtesy offer.  Therefore, it is uncertain when the Special Courtesy Offer was purportedly mailed and uncertain when or whether it was received and/or reviewed by Mr. PITT.

45.    On or about March 15, 2016, GALIC and METLIFE purportedly mailed a letter to Mr. PITT.  This letter advised that the Policy had lapsed and was "now without value." The letter stated that should Mr. PITT wish to reinstate his insurance, he would be required to complete an Application for Reinstatement. This formal reinstatement required Mr. PITT to represent his health condition, which during this period of time, was uncertain and subject to ongoing medical evaluation. In fact, as of this date, under California law and the terms of the Policy, the Policy had not terminated or lapsed, and as such, reinstatement was not necessary and the Policy had value.

46.    After March 15, 2016, Mr. PITT tendered the sum of $7,290, the full policy premiums due for the year 2016.

47.    And after March 15, 2016, Mr. PITT submitted an Application for Reinstatement.

48.    On February 10th, 2017, GALIC rejected Mr. PITT's application to reinstate the Policy and payment claiming that the Policy "no longer includes a

reinstatement provision.  Therefore this policy can not [*sic*] be reinstated." No other basis for rejection of the premiums and reinstatement request was offered.

49.     Prior to his death, Mr. PITT repeatedly advised that he had not received any Grace Notice required by the terms of the Policy.  Defendants never investigated this assertion and when asked to produce all documentation regarding their communications with Mr. PITT, they produced no evidence of mailing.

50.     On May 23, 2018, Mr. PITT died.  On that date, the Policy was still in force.  Mr. PITT had not received annual notices required by the Insurance Code Statutes.   Mr. PITT had not received 30-day notices of pending lapse or termination. Mr. PITT had not received notice of the 60-day grace period.  Mr. PITT had not received a 60-day grace period and the policy had been prematurely and improperly terminated during the statutory grace period.  For all of those reasons, the Policy remained in force, and Defendant GALIC was in material breach of contract, excusing any obligation to tender premiums.

51.     On August 1, 2018, Plaintiff made a formal claim for benefits.

52.     On August 16, 2018, Defendants denied Plaintiff's claim for benefits. The claim was denied on the sole basis that the Policy terminated and no longer was in force as a result of a non-payment of premium. No other basis for denial of the claim has been offered.

53.     In presenting her claim for benefits, Plaintiff requested a copy of all correspondence and writings relating to Defendants' Policy with Mr. PITT and Defendants have purportedly produced all such records.   In short:

   a.     The records produced by Defendants contain no evidence that Defendants complied with any provisions of Insurance Code Sections 10113.71 or 10113.72.

   b.     The records produced by Defendants contain no evidence that Defendants provided any grace notice as required by the original terms of the Policy.

c. The records produced by Defendants contain no actual proof of mailing for any correspondence between Defendants and Mr. PITT. Plaintiff is informed and believes that Defendants have no proof of mailing any notices to Plaintiff or Mr. PITT complying with the mandates of the Policy and/or the California Insurance Code.

## VII.   CLASS ACTION ALLEGATIONS

54.   Plaintiff is informed and believes that Defendants have not, since at least January 1, 2013, properly complied with the provisions of Insurance Code Sections 10113.71 and/or 10113.72. Since that time, Defendants have failed to provide these protections to policy owners and their beneficiaries.

55.   Plaintiff contends that the handling of the Policy prior to Mr. PITT's death was consistent with Defendants' standardize policies and procedures. Defendants have systematically failed to provide a class of policy owners the protections afforded by Sections 10113.71 and 10113.72.

56.   As a matter of standard policy or standard operating procedure, Defendants have not, since at least January 1, 2013, provided or utilized a contractual 60-day grace period for many insureds.

57.   As a matter of standard policy or standard operating procedure, Defendants have not, since at least January 1, 2013, provided or utilized compliant notices of pending lapse and or termination consistent with the provisions of California law and in particular Sections 10113.71 and 10113.72 for many insureds.

58.   Since at least January 1, 2013, Defendants have caused injury and damage to policy owners, beneficiaries, and persons of interest intended to be protected by Sections 10113.71 and 10113.72.

59.   Plaintiff, in her individual capacity as a beneficiary, and in her capacity as representative of the Estate of MICHAEL A. PITT, and as the class representative, brings this action on behalf of all members of the proposed classes and sub-classes (collectively referred to as "Classes"), as follows:

a.    **Policy Owner Class**

i.    **No 60-Day Grace Notice**

All past, present, and future owners of Defendants' individual life insurance policies in force on or after January 1, 2013 and governed by Section 10113.71(a), whose policies were or will be terminated or lapsed for non-payment of premium but who were not or will not be first afforded nor advised of their right to a contractual 60-day grace period.

ii.    **No 30-Day Notice**

All past, present, and future owners of Defendants' individual life insurance policies in force on or after January 1, 2013 and governed by Section 10113.71(b)(1)(3), whose policies were or will be terminated or lapsed for non-payment of premium but who were not given or will not be first given a written 30-day notice of pending lapse or termination.

iii.    **No Right to Designate**

All past, present, and future owners of Defendants' individual life insurance policies in force on or after January 1, 2013 and governed by Section 10113.72, whose policies were or will be lapsed or terminated for non-payment of premium, but were not or will not be afforded nor advised of their annual right to designate someone to receive notices of lapse or termination.

b.    **Beneficiary Class: Benefits Not Paid**

All past, present, and future beneficiaries of Defendants' individual life insurance policies in force on or after January 1, 2013 and governed by Sections 10113.71 and/or 10113.72, where their policies underwent or will undergo lapse, termination, and/or reinstatement without the policy owner first being afforded notice and

passage of a 60-day grace period, a 30-day notice, and/or an annual notice of a right to designate, and who were or will not be paid policy benefits.

60.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment or amended complaint or at the time of moving for class certification.  Specifically excluded from the proposed Classes are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendants, the Judge assigned to this action, and any member of the Judge's immediate family.

61.    Defendants' conduct has imposed a common injury on the members of the Classes. Defendants have acted, and have refused to act, on grounds generally applicable to the Classes, which makes final injunctive relief with respect to each claim as a whole appropriate.

62.    Plaintiff will and does faithfully represent, and is a member of, each of the Classes.

63.    ***Numerosity.***  The members of the Classes, together and separately, are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Classes contain hundreds and perhaps thousands of members.  The precise number of members in each Class is unknown to Plaintiff.  The true number of Class members is known or ascertainable by the Defendants, as are their identities.  Thus, Class members may likely be notified of the pendency of this action by first class mail, electronic mail, and/or by published notice.

64.    ***Existence and Predominance of Common Questions and Answers of Law and Fact***.  There is a well-defined community of interest in the questions and answers of law and fact involved affecting the members of the Classes.  The

questions and answers of law and fact common to the Classes predominate over questions and answers affecting only individual class members, including, but not limited to, the following:

a.    Whether Sections 10113.71 and 10113.72, in whole or in part, apply to Defendants' life insurance policies.

b.    Have Defendants violated the provisions of Sections 10113.71 and 10113.72?

c.    Are Defendants continuing to refuse to provide the protections affording by the provisions of Sections 10113.71 and 10113.72?

d.    Whether Defendants' life insurance policies have been ineffectively lapsed or terminated or subsequently been unnecessarily modified through reinstatement.

e.    Whether Defendants are required to provide grace periods, timely and proper written notices of pending lapse or pending termination, and provide policyholders a right to designate as set forth in Section 10113.72.

f.    Should the Court invalidate improper lapses, terminations and/or reinstatements of policies that resulted from Defendants' failure to comply with the Insurance Code?

g.    Should Defendants be required to make payments to beneficiaries of Policies where the insured has died and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?

65.    ***Typicality.***  Plaintiff's claims are typical of the claims of the members of the respective Classes because Plaintiff and each member of the Classes were victims of the same statutory violations.  Further, Plaintiff's claims are typical of the claims of her fellow Class members, which all arise from the same operative

facts involving the Defendants' unlawful violations of Sections 10113.71 and 10113.72.

66. ***Adequacy of Representation.***  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no interest adverse or antagonistic to that of the Classes.

67. ***Superiority***.  A class action is a superior method for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendants.  It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefit of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances. Moreover, many Class members remain unaware of their rights and without this Class action, would remain unaware of their rights and benefits.

68. In the alternative, the Classes may also be certified because:

(a)  The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with

respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)    The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

69.    Unless the Classes are certified, Defendants will retain monies received because of their conduct taken against the members of the Classes and the Plaintiff.  Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and members of the Classes will continue to be harmed.

70.    Plaintiff knows of no difficulty likely to be encountered in the management of this litigation that would preclude its maintenance as a Class Action.  Because the action is brought as a Class Action, the Court need only apply a single set of California laws as they relate to Defendants' violation of Sections 10113.71 and 10113.72.

71.    Plaintiff has incurred, and will incur, expenses for attorney's fees and costs in bringing this action.  These attorney's fees and costs are necessary for the prosecution of this action and will result in a benefit to each of the members of the Classes.

72.    Plaintiff is informed and believes, and based thereon alleges, that certain members of the Classes are "senior citizens" or "disabled persons" as defined in California Civil Code Section 1761(f) and (g), and therefore are entitled to treble damages under California Civil Code Section 3345.

## VIII.  <u>FIRST CAUSE OF ACTION</u>

### FOR DECLARATORY JUDGMENT OR RELIEF

**(By Plaintiff, individually and on Behalf of
the Estate of Michael A. Pitt and the Classes)
(Against All Defendants)**

73.     Plaintiff incorporates by reference each and every allegation contained above.

74.     Plaintiff PITT, in her individual capacity, as well as in her representative capacity for the Estate of MICHAEL A. PITT, brings this action individually and on behalf of all members of the Classes.

**A.     Basis for Relief**

75.     On January 1, 2013, the California Insurance Code was amended by Sections 10113.71 and 10113.72. The provisions of these Statutes were immediately, and thereafter, read into all in-force policies regardless of the date of issuance.

76.     These statutes and amendments to the California Insurance Code were intended to and do regulate the lapse and termination procedures arising from the nonpayment of premiums which may occur from the date of enactment and thereafter.

77.     The amendments were not intended to relieve or waive a policyholder's continuing obligation to pay premiums but operated to keep the policy in force until the policy was properly lapsed or terminated consistent with the statutory provisions which were incorporated into the terms of the policy by law. Each of these statutory requirements were intended to stand alone.

78.     Forfeiture provisions for nonpayment of premium for life insurance policies are strictly construed against lapse or termination and the law of the state of California disfavors forfeiture of insurance. Forfeitures "are often the means of great oppression and injustice" and "the courts should be liberal in construing the

transaction in favor of avoiding a forfeiture." (*Ins. Co. v. Norton* (1978) 96 U.S. 234, 242.) "Forfeiture of a policy will be avoided on any reasonable showing." *Klotz v. Old Line Life Ins. Co. of Amer.,* 955 F.Supp. 1183, 1188 (N.D. Cal. 1996).

### B.    Declaration of Rights and Obligations

79.    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties under the Policy, and as to the rights of the Class of insureds and the beneficiaries Plaintiff represents. Plaintiff contends Sections 10113.71 and 10113.72 apply to all of Defendants' California life insurance policies in force as of or after January 1, 2013, including any policies that were renewed in California on or after January 1, 2013. Plaintiff also contends these Statutes govern the manner and procedure in which life insurance policies can legally be lapsed or terminated as of January 1, 2013, and thereafter.   Defendants contend that Sections 10113.71 and 10113.72 do not apply to many categories of their policies, including any policies in existence before January 1, 2013.

80.    Plaintiff desires a judicial determination of her rights and duties and of the Class members' rights and duties, and a declaration that Sections 10113.71 and 10113.72 applied as of January 1, 2013, to Defendants' California policies in force as of or at any time after January 1, 2013.

81.    A judicial declaration would advise insureds and their beneficiaries of their rights, and would advise Defendants of its duties to Plaintiff and to Class members concerning policyholders' rights to designate individuals to receive notices of pending lapse and termination and the right to receive notice of, and the ability to properly utilize, the legally required grace period.  A judicial declaration is also necessary to determine the validity of any unnecessary reinstatements obtained, to determine whether policies were legally in force at the times of deaths of insureds, and to determine whether beneficiaries were wrongfully denied payment of benefits under their policies.

## IX.   SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

**(By Plaintiff, Individually and on Behalf of
the Estate of Michael A. Pitt and the Classes)
(Against all Defendants)**

82.    Plaintiff incorporates by reference each and every allegation contained above.

83.    Prior to January 1, 2013, Defendants issued or delivered policies to Class policy owners or beneficiaries which were in force on January 1, 2013 and which were or would become governed by the laws of the State of California, including Sections 10113.71 and10113.72.

84.    Defendants breached and continue to breach the express terms of such policies, as well as the statutory mandates regarding such policies, by, amongst other things:

(a)    Failing to include in such policies and failing to provide a 60-day grace period for purposes of payment of premiums and lapse and termination of coverage for nonpayment of premium;

(b)    Lapsing and/or Terminating policies before expiration of the 60-day grace period;

(c)    Failing to include in such policies and failing to provide accurate 30-day written notice of pending lapse or termination, consistent with the provisions of Sections 10113.71 and 10113.72;

(d)    Failing to provide proper notice to policyholders on an annual basis of the policyholders' right to designate individuals to receive notices of pending lapse or termination;

(e)    Failing to provide prompt and timely notice to policyholders of the application of Sections 10113.71 and 10113.72 and the mandatory inclusion in policies of the terms and provisions supplied by those Sections;

(f)    Lapsing or terminating policies without complying with the terms of the policies which incorporate the provisions of Sections 10113.71 and 10113.72;

(g)    Refusing to pay benefits to beneficiaries, despite knowledge and information that Defendants had not strictly complied with the mandatory provisions of Sections 10113.71 and 10113.72;

(h)    Improperly requiring reinstatement of policies that had not lapsed or terminated and which were not required or were not subject to reinstatement due to Defendants' violation of Sections 10113.71 and 10113.72; and

(i)    Otherwise failing to fully comply with the provisions of Sections 10113.71 and 10113.72 on or after January 1, 2013.

85.    All of the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the policies.  To the extent any contractual obligations, duties, or conditions are imposed on policyholders or on beneficiaries, those obligations, duties, and conditions have been waived and/or have been excused due to Defendants' material breaches. After each material breach, each policy owner was excused from the further tendering of premiums and from any further performance under the terms of the policy, including but not limited to the acceptance of any offer by GALIC of any reinstatement or modification to the policy.

86.    To the extent any policyholders and/or beneficiaries have failed to comply with any payment conditions or other conditions for the continuation of insurance, Defendants are estopped to assert such conditions due to their conduct and material breaches.  Yet, Defendants have done so with respect to Plaintiff and members of the Classes.

87.    In California, the measure of damage for material breach of a life insurance policy is set as the "sum or sums payable in the manner and at the times as provided in the policy to person entitled thereto."  Cal. Ins. Code § 10111.

88.    As a legal and proximate result of the conduct described herein, the Classes have suffered direct and foreseeable economic damages, including loss of policy benefits, and allowed interest under the terms of the policy and the law, in a nature and amount to be proven at the time of trial.

## X.    THIRD CAUSE OF ACTION
### BAD FAITH

**(By Plaintiff, Individually)**
**(Against all Defendants)**

89.    Plaintiff incorporates by reference each and every allegation contained above.

90.    At all times herein, Plaintiff was the wife of the insured, the primary express beneficiary of the Policy, and the individual from whom benefits of the Policy have been wrongfully withheld.  Upon Mr. PITT's death, Plaintiff became contractually entitled to benefits under the Policy and was to be treated as an insured under the express and implied terms of the Policy and the laws of the state of California.

91.    At all times mentioned herein, Defendant GALIC and/or TOWER owed Plaintiff and Mr. PITT an obligation to perform the express and implied obligations imposed by the Policy, to act in good faith, to deal fairly with Mr. PITT and Plaintiff, and to not interfere with the insured's and Plaintiff's rights to receive the benefits of the Policy.  The obligations and duties described herein have existed from the inception of the Policy and continue through the pendency of this action.

92.    By its conduct described above, GALIC and/or TOWER have materially breached the terms and conditions of the Policy and the statutory mandates of the laws of the state of California by improperly lapsing and terminating the Policy, thereafter refusing to properly advise Plaintiff of her rights

and of GALIC and/or TOWER's duties and responsibilities, failing to promptly pay the subject claim, and delaying payment of the claim.

93.     Specifically, Defendants breached the Policy in 2015 and 2016 by failing to advise Mr. PITT of his right to designate under Sections 10113.71and 10113.72.    Thereafter in 2016, Defendants violated Section 10113.71(a) by terminating the policy on February 7th, 2016; 30-days into the statutory 60-day grace period.  Defendants materially breached the Policy by failing to provide a statutorily required notice of pending lapse as well as the attempted termination. Defendants further materially breached the Policy by failing to advise Mr. PITT of these provisions.  Defendants also materially breached the policy by terminating the policy without first providing the required grace notice as required by the express terms of the Policy.

94.     Defendants also violated the terms of the Policy by failing to comply with the provisions of the Policy that required GALIC to comply with and utilize the laws of the State governing the Policy.  From 2014 through Mr. PITT's death and after the denial of the claim, GALIC has failed to comply with that term of the Policy and has specifically ignored its obligations.

95.     Plaintiff alleges that when Defendants repudiated and unilaterally terminated the Policy, Defendants were aware the Policy was a valid and enforceable contract and required acknowledgment that the Policy was valid and was not subject to termination of coverage, as asserted by Defendants.

96.     Defendants, at all times relevant herein and to date, breached the covenant of good faith and fair dealing owed to Plaintiff and Mr. PITT by failing to comply with the terms of the Policy, by asserting Policy provisions which did not apply to preclude coverage, by failing to completely investigate their attempts to terminate the Policy, by failing to abide by the Policy and the law regarding written notice of pending lapse and termination and applicable grace periods, by placing Defendants' interests above those of its policyholders, by unreasonably asserting

Policy provisions without considering the actual facts and the law, by misrepresenting Policy terms and conditions, by misrepresenting and applying the law, and by failing to comply with proper industry standards and customs regarding lapse or termination of life insurance policies.

97.    Defendants knew or should have known, prior to January 1, 2013, that the provisions Section 10113.71(a) mandate that 60-day grace periods apply to policies issued or delivered prior to January 1, 2013.    Despite such knowledge, GALIC refuses, in bad faith and with no good cause, to apply this law to Plaintiff's Policy.

98.    Defendants knew, or should have known, prior to January 1, 2013, that Section 10113.71:  (1) mandated that 60-day grace periods applied to policies in force as of January 1, 2013 regardless of whether the Policy was issued or delivered prior to January 1, 2013; (2) that Sections 10113.71(b)(1) and (b)(3) and 10113.72(c) mandated that no lapse or termination is effective unless preceded by timely and proper notices of pending lapse or termination; and (3) that Section 10113.71(b) mandates that all policyholders annually receive notice of a right to designate.   Defendants know, or should know, that the courts of the state of California are the sole authority for statutory interpretation and that at all times during all pending claims no California court of law has ruled that the Sections 10113.71 and 10113.72 did not apply to policies in force as of January 1, 2013 or that these Sections do not apply to policies issued or delivered prior to January 1, 2013.  Despite such knowledge, GALIC refuses in bad faith and with no good cause to apply this law to Plaintiff's Policy and continues to deny payment of Plaintiff's benefits.

99.    Despite knowledge of the applicability of these provisions to policies issued before January 1, 2013, and the impropriety of its actions, GALIC made the conscious decision, ratified by its managerial agents, officers, and directors, to unilaterally terminate the Policy for life insurance benefits on these improper

grounds, denying Mr. PITT and Plaintiff, Decedent's sole beneficiary, the benefits Mr. PITT bargained for and relied on. GALIC now continues this bad faith denial of benefits without proper cause and in bad faith.

100. GALIC, by and through its officers and directors and other managerial agents, consciously ignored the application of the laws of the state of California regarding such notices and instituted a business practice and course of conduct designed to intentionally violate such provisions. Knowing these provisions were enacted in the state of California to avoid unintended forfeiture of policies, GALIC, by and through its officers, consciously ignored, and continue to consciously ignore, the obligations imposed on GALIC to avoid payment of claims and to continue to maintain the practice of encouraging unintended lapses of policies, as heretofore described.

101. Defendants' acts all constitute malice, oppression, and fraud. GALIC and its officers, directors, and managerial agents, have also made repeated intentional misrepresentations and engaged in active concealment, as heretofore discussed, thus constituting deceit and fraud. In performing these acts, GALIC and its officers, directors, and managerial agents participated or ratified active concealment of the rights of insureds with regards to termination of coverage for nonpayment to avoid incurring liabilities and costs associated with compliance with the law. Such conduct was, in fact, malicious, oppressive, and fraudulent, justifying an award of punitive damages against Defendants.

102. Plaintiff has suffered and will continue to suffer injuries and damages legally caused by Defendants' past and ongoing failure to uphold the terms of the Policy. Plaintiff has also suffered and will continue to suffer consequential economic injuries in a nature and amount to be proven at the time of the trial. These injuries include emotional distress, concern, anger, and worry concerning the loss of benefits. Plaintiff has also been required to retain legal counsel and has and will continue to incur attorney's fees and expenses in the pursuit of the Policy

benefits.  Defendant's conduct is the legal cause of the need for these expenditures, for which, along with other actual injuries, damages, and future ongoing injuries and damages, Plaintiff seeks compensation in an amount within the jurisdiction of this Court to be proven at the time of trial.  Plaintiff thus seeks full reimbursement of all attorney's fees and expenses incurred to obtain the benefits of the Policy.

## XI.    FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200, *et seq.*

**(By Plaintiff, individually and on Behalf of the Estate of Michael A. Pitt, and the Classes) (Against All Defendants)**

103.   Plaintiff incorporates by reference each and every allegation contained above.

104.   Plaintiff brings this claim individually as well as in her representative capacity for the Estate of Michael A. Pitt, and also on behalf of all members of the Classes as necessary.

105.   California Business and Professions Code Sections 17200, *et. seq.* ("UCL") prohibit any unlawful, unfair, deceptive, or fraudulent business practice.

106.   Defendants committed and continue to violate California's UCL, including, but not limited to failing to comply with Sections 10113.71 and 10113.72, including by failing to afford insureds, including Plaintiff and Mr. PITT, the requisite 60-day grace period and/or written 30-day notice prior to any lapse or termination, and further, an annual right to designate someone else to also receive notices of pending lapse or termination of coverage.

107.   The unlawful and unfair business practices described above have proximately caused monetary damages to Plaintiff, the Classes, and to the general public.

108.   Pursuant to California's UCL, Plaintiff, the general public, and the members of the Classes are entitled to restitution of money or property acquired by

Defendants by means of such business practices, in amounts yet unknown, but to be ascertained at trial.

109.   Pursuant to California's UCL, Plaintiff and the members of the Classes and the general public are entitled to injunctive relief, including public injunctive relief, against Defendants' ongoing business practices.

110.   If Defendants are not enjoined from engaging in the unlawful business practices described above, Plaintiff, the Classes, and the general public will be irreparably injured.

111.   Plaintiff, the general public, and the members of the Classes have no plain, speedy, and adequate remedy at law.

112.   Defendants, if not enjoined by this Court, will continue to engage in the unlawful business practices described above in violation of the UCL, in derogation of the rights of Plaintiff, the Classes, and the general public.

113.   Plaintiff's success in this action will result in the enforcement of important rights affecting the public interest by conferring a significant benefit upon the general public.

114.   Private enforcement of these rights is necessary as no public agency has pursued enforcement and the interests Plaintiff seeks to protect are for the benefit of the general public.  Plaintiff is therefore entitled to an award of attorneys' fees and costs of suit pursuant to, among others, California's UCL, the Common Fund doctrine, the Public Benefit Doctrine, and California Code of Civil Procedure Section 1021.5.

## XII.  <u>PRAYER FOR RELIEF</u>

Plaintiff prays for relief against Defendants, and each of them, as follows:

1. For certification of this action as a Class Action;

2. A declaration of Plaintiff's and the Classes' rights pursuant to the insurance policies issued by Defendants;

CLASS ACTION COMPLAINT

3.  For an injunction to issue against Defendants, including public injunctive relief;

4.  For the Classes, economic damages according to proof;

5.  For Plaintiff individually, economic and noneconomic damages, punitive and exemplary damages;

6.  For attorneys' fees and all litigation costs and expenses; and

7.  For such other and further relief as this Court deems just and proper.

## XIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

Respectfully submitted:

DATED:   October 30, 2018                **NICHOLAS & TOMASEVIC, LLP**


By:     */s/ Craig M. Nicholas*
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Georg M. Capielo (SBN 245491)
Sarah Ball (SBN 292337)
Email: jackbwinters@earthlink.net
Email: gcapielo@einsurelaw.com
Email: sball@einsurelaw.com

Attorneys for Plaintiff SUSAN A. PITT,
Individually, as Successor-In-Interest to
MICHAEL A. PITT, Decedent, and on
behalf of the Estate of MICHAEL A. PITT,
and on Behalf of the Class