**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SUSAN A. PITT,**<br>Plaintiff,<br>vs.<br>**METROPOLITAN TOWER LIFE INSURANCE COMPANY, ET AL.,**<br>Defendants. | CASE NO. 18-cv-06609-YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 47, 48, 51, 52, 70, 101 |

Plaintiff Susan Pitt, as an individual and successor-in-interest to her husband, Michael A. Pitt, brings this putative class action against MetLife, Inc. ("MLI") and its wholly owned subsidiaries, Metlife Group, Inc. ("MLG") and Metropolitan Tower Life Insurance Company ("Tower"), alleging violations of the California Insurance Code and California common law regulating the lapse and termination of life insurance policies.

Now before the Court are defendants' motions to dismiss on the following grounds: (1) as to MLG and MLI, for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6); and (2) as to Tower, for lack of proper venue under Rule 12(b)(3) and failure to state a claim under Rule 12(b)(6). In the alternative, Tower seeks to transfer venue to the Southern District of New York. Further, defendants have moved to stay discovery pending resolution of the jurisdictional and venue issues addressed in the motions to dismiss. The motions came on for oral argument on June 18, 2019, after which the Court ordered jurisdictional discovery and supplemental briefing.

Having carefully considered the papers submitted, the arguments of the parties at the hearing, the admissible evidence, and the pleadings in this action, and for the reasons set forth

below, the Court hereby **ORDERS** that (1) MLG's motion to dismiss for lack of personal jurisdiction is **GRANTED WITH PREJUDICE**; (2) MLI's motion to dismiss for lack of personal jurisdiction is **GRANTED WITH PREJUDICE**; and (3) Tower's motion to dismiss for improper venue is **GRANTED WITH PREJUDICE**.[1]

### I. BACKGROUND

The complaint alleges as follows:

In 2003, plaintiff's husband purchased a $2 million life insurance policy from General American Life Insurance Company ("GALIC"), the predecessor to Tower, naming plaintiff as the sole beneficiary of the policy.[2] When the policy was initially issued in 2003, the Pitts lived in Illinois. In 2014, the Pitts moved to California. From 2014 until Mr. Pitt's death in 2018, the Pitts made premium payments and communicated with MetLife regarding the policy from California. At no point during this period was Mr. Pitt advised of his rights to designate another recipient for notices, to receive a notice prior to lapse or termination, or to a 60-day grace period before such lapse or termination. In January 2016, when Mr. Pitt was suffering from a progressive medical condition that would soon take his life, plaintiff believes Mr. Pitt may have inadvertently missed a premium payment. On or about February 7, 2016, defendants advised the Pitts that they had terminated the policy for non-payment of the premium.

Plaintiff alleges that defendants' failure to provide Mr. Pitt and other members of the

---

[1] Plaintiff filed a motion to seal certain documents pursuant to the parties' protective order. (Dkt. No. 101.) Plaintiff herself does not contend that the documents at issue are confidential, and defendants did not file a response to the motion. As such, the motion to seal is **DENIED**. Additionally, plaintiff filed a request for judicial notice of (i) filings in public court cases (ii) documents posted on government websites, (iii) filings with government regulators, and (iv) legislative materials. (Dkt. No. 68.) Under Federal Rule of Evidence 201(b), a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Because the documents offered by plaintiff are undisputed matters of public record, the request for judicial notice is **GRANTED**.

[2] The FAC also names GALIC as a defendant in this action. On March 19, 2019, the Court granted the parties' stipulation dismissing GALIC without prejudice, on the grounds that GALIC had merged with and into Tower, with Tower being the sole surviving entity with responsibility for any liability in the lawsuit that otherwise would have been assessed against GALIC.

2

putative class with proper notice were part of a general practice of ignoring and misapplying sections 10113.71 and 10113.72 of the California Insurance Code, which instituted procedural requirements for the termination and lapse of life insurance policies, with the aim of avoiding unintended forfeitures, primarily for the elderly and the ill. The FAC alleges causes of action for declaratory judgment; breach of contract; bad faith; unfair competition in violation of California Business and Professions Code section 17200, *et seq.*; financial elder abuse in violation of California Welfare and Institutions Code section 15610.30.

Relevant here, MLI, which is incorporated in Delaware and headquartered in New York, functions as a holding company for its insurance and financial subsidiaries. MLG and Tower are two such subsidiaries. MLG, incorporated and headquartered in New York, employ the individuals that administered the subject policy and claims process. Tower, incorporated in Nebraska and headquartered in New York, is engaged in the actual sale and administration of life insurance.

## II. LEGAL STANDARD

### A. Personal Jurisdiction

A motion brought under Federal Rule of Civil Procedure 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Here, California law applies. California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Civ. Proc. Code § 410.10. As such, for a court to exercise personal jurisdiction over a non-resident defendant, that defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Personal jurisdiction may be either general or specific. *See Daimler AG v. Bauman*,

571 U.S. 117, 127 (2014).

General jurisdiction allows a court to assert jurisdiction over out-of-state corporations "to hear any and all claims against them" and attaches to a defendant only if its "affiliations with the State are so continuous and systemic as to render it essentially at home in the forum State." *Id.* at 122 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). It would be the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19.

By contrast, specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted). Said another way, personal jurisdiction requires the Court evaluate whether the specific activity giving rise to the plaintiff's causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445-46 (1952). The Ninth Circuit applies a three-prong test to determine whether a non-resident defendant's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of demonstrating the first two prongs. *Id.* If the plaintiff fails to satisfy either of these prongs, then personal jurisdiction is not established in the forum state. *Id.* If the plaintiff carries this burden, then the defendant must come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Id.*

4

Where, as here, a motion to dismiss is based on written submissions—rather than an evidentiary hearing—the plaintiff need only make a *prima facie* showing of jurisdiction. *Schwarzenegger*, 374 F.3d at 800. A plaintiff makes a *prima facie* showing by demonstrating facts that, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint, and conflicts between facts contained in the parties' affidavits must be resolved in a plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

**B.  Venue**

Under 28 U.S.C. section 1391(b), venue is proper in (1) a district in which any defendant resides, if all of the defendants reside in the same state; (2) a district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

For purposes of venue, a corporate defendant "resides" "in any judicial district in which such defendant is "subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). "[I]n a [s]tate which has more than one judicial district," such as California, "and in which a defendant that is a corporation is subject to personal jurisdiction . . . , such corporation shall be deemed to reside in any district in that [s]tate within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate [s]tate." 28 U.S.C. § 1391(d).

When considering a motion to dismiss for improper venue, a court need not accept the pleadings as true and may consider facts outside of the pleadings. *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1254 (9th Cir. 2005). Once the defendant has challenged venue as improper, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *Friends of the River v. United States Army Corps of Eng'rs*, No. 16-cv-05052-YGR, 2016 WL 6873467, at *1 (N.D. Cal. Nov. 22, 2016).

**III. ANALYSIS**

**A. MLG**

First, the Court considers whether it has personal jurisdiction over MLG. Plaintiff, who bears the burden of satisfying the first two prongs of the specific personal jurisdiction test (purposeful availment and claims arising out of forum-related contacts), argues that specific personal jurisdiction exists principally on two grounds.

First, plaintiff characterizes MLI and its subsidiaries as a "collective insurance agency," whereby the insurance activities of one entity, namely Tower (whose predecessor issued plaintiff's policy), may be imputed to every other entity, namely MLG.[3] In support of this contention, plaintiff points to evidence that MLI and various of its subsidiaries shared, for example, administrative services, regulatory and lobbying services, a legal team, and office space. Plaintiff also asserts that these entities frequently identify themselves collectively under the trade name "MetLife," and relatedly, MLI has entered into regulatory settlements and pursued insurance-related litigation on behalf of its collective subsidiaries. Thus, according to plaintiff, any forum-related insurance activities of MLI's subsidiaries can be attributed to MLG as well.

Plaintiff's collective enterprise theory fails to persuade. As MLG points out, numerous courts in this circuit have rejected the use of such a theory as a basis for establishing jurisdiction. *See Iconlab Inc. v. Valeant Pharms. Int'l, Inc.,* No. 8:16-CV-01321-JLS-KES, 2017 WL 7240856, at *6 (C.D. Cal. Apr. 25, 2017) ("Plaintiffs' other, exotic theories of imputing contacts—'single enterprise,' 'aiding and abetting,' and 'ratification'—are not valid theories of establishing personal jurisdiction in the Ninth Circuit to the extent that they stray from the well-established alter ego and agency theories."); *Campanelli v. Image First Unif Rental Serv., Inc.*, No. 15-cv-04456, 2016 WL 4729173, at *7 (N.D. Cal. Sept. 12, 2016) (observing that "'single enterprise' and 'joint employer' theories are bases for liability, *not* tests for personal jurisdiction."); *NuCal Foods, Inc. v. Quality*

---

[3] Elsewhere in her brief, plaintiff makes a blanket argument that MLI and each of its subsidiaries act as "the agents, representatives, alter egos, employers, or other co-venturers of one another." The Court notes, however, that these are different doctrines. Herein, the Court addresses only the specific jurisdictional theories set forth by plaintiff.

*Egg LLC*, 887 F. Supp. 2d 977, 990 (E.D. Cal. 2012) ("Here, even if plaintiff's allegation that the entity defendants were a 'consolidated farming enterprise that included every aspect of egg production' was true, that is not enough to demonstrate that each separate entity was actually involved in the sale and delivery of the allegedly tainted eggs by Quality Egg to NuCal in California."). Plaintiff does not identify any contrary authority, nor does she refute or distinguish the authorities cited by MLG.

Even if there was a legal basis for plaintiff's theory, plaintiff offers no evidence—as opposed to mere conclusory allegations—establishing that MLI and its subsidiaries are in fact a single enterprise, rather than separate and distinct corporate entities. Although certain of the subsidiaries shared employees, departments, and physical space, there is no evidence of a complete overlap in operations or comingling of funds. Further, as the Supreme Court has noted, employees routinely wear multiple "hats" in the course of performing duties for different legal entities without imputing the conduct of one entity to all of its corporate affiliates. *United States v. Bestfoods*, 524 U.S. 51, 68 (1998); *see also Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 549, 99 Cal. Rptr. 2d 824, 844 (2000) ("[T]hat the directors and officers were interlocking is insufficient to rebut the presumption that each common officer or director wore the appropriate 'hat' when making corporate and operational decisions for the respective entities.").

Nor is the fact that MLI publicly represented itself as "MetLife," "we," or "our" inherently suspect. As this Court has held, "courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interest required to show companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016); *see also Rojas v. Hamm,* No. 18-cv-01779-WHO, 2019 WL 3779706, at *10 (N.D. Cal. Aug. 12, 2019) ("Similarly, just because entities present themselves as 'one integrated company' for marketing purposes does not, on its own, establish that companies are alter egos."). Given the size and complexity of the corporate structure at issue here, the use of the brand name "MetLife" appears reasonable.

Second, plaintiff avers that the Court has personal jurisdiction over MLG because MLG employees performed the day-to-day insurance services at issue in this case, including

7

communicating with insureds and beneficiaries, collecting premiums, and handling claims in California. Plaintiff also contends that MLG deployed lobbyists, trade groups, and employees to California to understand and implement the legislative changes referenced in the complaint across all MetLife businesses. For example, plaintiff emphasizes that MLG Vice President Michael Hickey was part of a team tasked with monitoring California legislation and interacting with the Association of California Life and Health Insurance Companies about insurance matters germane to this lawsuit.

MLG does not dispute that it technically employs the individuals who performed insurance-related work for MLI and its subsidiaries. MLG argues, however, that its sole purpose is to provide personnel to affiliated corporate entities pursuant to inter-company agreements. In short, MLG likens itself to an internal staffing agency. MLG asserts that it does not exercise any supervision or control over its employees, and thus, this Court does not have personal jurisdiction over MLG because of its employees' alleged forum-related contacts.

The service agreement pursuant to which MLG provides personnel to MLI subsidiaries supports MLG's contention that it is merely a staffing agency that does not exercise meaningful control over the work performed by its employees. Namely, the agreement provides that "[p]ersonnel provided by [MLG] to a Recipient pursuant to this Agreement shall, with respect to services performed on behalf of such Recipient, at all such times act . . . *solely on behalf of and under the supervision and at the direction of the board of directors and officers of such Recipient*." (Emphasis supplied.) The agreement further provides that it "shall not constitute a delegation of any authority or responsibility by any Recipient to [MLG] in respect of services performed by [MLG] personnel provided hereunder." Moreover, "the provision of Services pursuant to th[e] Agreement shall in no way impair the absolute right and responsibility to supervise, direct and oversee the business and operations of each of the Recipients by its own board of directors and officers." In exchange for personnel, MLI subsidiaries agree "to pay to [MLG] a charge." The parties enter into these inter-company agreements in "contemplat[ion] that this arrangement for Services will achieve certain administrative efficiencies[.]"

The terms of the agreement, which limit MLG's role in directing the activities of its

8

employees, are borne out in the way MLG and Tower operate. MLG offers unrebutted testimony from MLG and Tower employees stating that MLG does not exercise control over its employees who issue and administer insurance for, and interact with governments and regulators on behalf of, Tower. Rather, as contemplated by the services agreement and confirmed by employee testimony, "MetLife Group provides people, and the officers of [Tower] supervise and direct them in their activities." This is true of, for example, Hickey, who is employed by MLG but performs legislative work on behalf of MetLife's "writing companies," or MLI subsidiaries who conduct insurance business within the state. MLG is not licensed to issue or administer insurance in the state of California or anywhere else.[4]

In sum, plaintiff has not satisfied her burden of establishing a basis for personal jurisdiction based on MLG's staffing operations.[5] Further, because this Court already permitted supplemental discovery, and plaintiff still has not met her burden of establishing personal jurisdiction, the Court finds further amendment would be futile. MLG's motion therefore is granted with prejudice.

///

///

---

[4] The cases relied upon by plaintiff are inapposite. In *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 988 (9th Cir. 2014), the Ninth Circuit held that a delivery driver was an employee, not an independent contractor, for purposes of California's wage and hour laws. This case involves none of the same issues. Likewise, plaintiff's reliance on *Brice v. Plain Green, LLC*, No. 18-CV-01200-WHO, 2019 WL 1500361, at *16-17 (N.D. Cal. Mar. 12, 2019) is unpersuasive because there, the court found personal jurisdiction existed over a parent company that was "responsible for the inception, direction, initial funding, operations . . . and ongoing consulting necessary" for the subsidiary to conduct its lending operations. Here, plaintiff has not presented evidence of such an intimate relationship between separate legal entities.

[5] This Court's decision in *Corcoran* is in accord. There, the plaintiff sought to impute liability to a foreign defendant because personnel making decisions on behalf of that defendant's in-state subsidiary were "also employees of [the foreign defendant]." 169 F. Supp. 3d at 981. This Court rejected the plaintiff's argument under both direct and alter-ego theories, noting that notwithstanding the parent's status as an employer, the plaintiff failed to establish that the parent exercised control. *Id.* at 982-83. Here, as in *Corcoran*, plaintiff has not demonstrated that MLG controlled the activities of its personnel such that Tower's insurance-related conduct should be imputed to MLG for jurisdictional purposes.

9

**B. MLI**

Next, the Court considers whether it has personal jurisdiction over MLI. Plaintiff avers that specific personal jurisdiction exists, based on both MLI's own conduct and the control MLI exercises over its subsidiaries, which plaintiff argues should be imputed to MLI.

With respect to MLI's own purported contacts with the forum, plaintiff contends that MLI is in the insurance business in California, and thus, purposefully availed itself of doing business in this forum. Plaintiff offers scant support for this contention, however, largely relying on general public statements that are consistent with MLI's status as a holding company without insurance operations of its own. For example, plaintiff highlights MLI's statement that it is "a traditional life insurance group," set forth in its cross-motion for summary judgment in *Metlife, Inc. v. Fin. Stability Oversight Council,* Case No. 1:15-cv-45, available at 2015 WL 3901889 (June 10, 2015). In the same briefing, however, MLI states that it "conducts nearly all of its business through subsidiary insurance companies that sell and issue insurance products, and hold, invest, and manage the assets required to support the policy liabilities." The ownership and customary control of a subsidiary corporation by a parent corporation, without more, does not subject the parent to the personal jurisdiction of the state where the subsidiary does business. *Cannon Mfg. Co. v. Cudahy Co.*, 267 U.S. 333, 336-37 (1925); *Bestfoods*, 524 U.S. at 71-72 (requiring more than ownership of stock, supervision of finance and capital budget decisions, or shared directorships for a finding of agency under "accepted norms of parental oversight").

In addition, MLI offers testimony from multiple employees representing that it is "not in the business of insuring." Like MLG, MLI itself is not licensed to issue or administer insurance in California. Thus, the Court is not persuaded that specific personal jurisdiction exists based on MLI's own conduct.

Plaintiff also argues that MLI is subject to personal jurisdiction in this Court because of the acts of its subsidiaries, which should be imputed to MLI. To impute contacts of a subsidiary to a parent for a finding of specific jurisdiction, however, a plaintiff must show "that the parent company [has] the right to substantially control its subsidiary's activities." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017). Although plaintiff alleges that MLI directly

10

controls its subsidiaries' operations, plaintiff does not support these conclusory allegations with sufficient evidence, notwithstanding this Court's authorization of jurisdictional discovery.

For example, plaintiff notes that Tower's predecessor, in its filings with state governments and agencies, described MLI as its "ultimate controlling entity," with "the power to direct or cause the direction of the management and policies of [its subsidiary]." This statement, however, was made in reference to MLI's ownership of Tower's stock and MLI's power to exercise shareholder voting rights—not as an indication of MLI's control over day-to-day operations at Tower. Moreover, a parent may be involved in "macro-management" of a subsidiary without subjecting itself to imputed personal jurisdiction. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction."); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1178 (9th Cir. 1980) (foreign corporation's approval of allegedly illegal policy implemented by domestic corporation in forum state did not constitute sufficient contacts to support specific jurisdiction over parent).

Nor are MLI's financial ties to subsidiaries like Tower sufficient establish personal jurisdiction. The Ninth Circuit has held that a parent company may finance a subsidiary without imputing the subsidiary's contacts to the parent. *Ranza*, 793 F.3d at 1074. Further, "under California law, consolidated reporting," including tax reporting, "do[es] not establish agency for purposes of jurisdiction." *F. Hoffman-La Roche, Ltd. v. Superior Court*, 130 Cal. App. 4th 782, 801, 30 Cal. Rptr. 3d 407, 421 (2005); *Sonora*, 83 Cal. App. 4th at 549-50 ("[C]onsolidating the activities of a subsidiary into the parent's annual reports is a common business practice."). Indeed, the parent-subsidiary relationship "contemplates a close financial connection between parent and subsidiary and a certain degree of direction and management exercised by the former over the latter." *Sonora*, 83 Cal. App. 4th at 541.

Moreover, plaintiff's allegation that all written communications related to the subject policy "identif[ied] MetLife, Inc. as the insurer or the entity responsible for the handling of [the] policy, its administration, and . . . whether to pay any claim or continue to insure any individual"

11

is directly refuted by the evidence. MLI offers copies of correspondence sent to Mr. Pitt that includes the names "General American Life Insurance Company" and "MetLife." As discussed below, Tower does not dispute that its predecessor, GALIC, sent this correspondence. With respect to "MetLife," for the reasons discussed in the previous section, use of a trade name does not suffice to establish imputed jurisdiction. *See Corcoran*, 169 F. Supp. 3d at 984 (recognizing that separate corporate entities may present themselves as single entity for marketing or trade purpose without imputing acts of one to another for jurisdictional purposes). Additionally, MLI offers several employee declarations stating that MLI does not direct the day-to-day operations of its subsidiaries, including how they administer insurance policies like the ones at issue in this case.[6]

The law requires this Court to respect the principle of corporate separateness unless there is an evidentiary basis for the Court to do otherwise. Plaintiff has not offered such evidence here. Accordingly, MLI's motion to dismiss for lack of jurisdiction is granted. Because further amendment would be futile, the Court grants this dismissal with prejudice.

**C.     Tower**

Having dismissed the claims against MLG and MLI for lack of personal jurisdiction, the Court next turns to Tower's motion to dismiss for improper venue. Plaintiff contends that venue is proper in this district pursuant to 28 U.S.C. section 1391(b)(1) and (b)(2). Below, the Court addresses each purported basis for venue in turn.

Under section 1391(b)(1), venue is proper in a district in which any defendant resides, if all defendants reside in the same state. A corporate defendant "resides" "in any judicial district in which such defendant is "subject to the court's personal jurisdiction with respect to the civil action

---

[6] Plaintiff also contends that MLI is subject to personal jurisdiction in this Court because its "officers signed the Pitt Policy." In support of this argument, plaintiff identifies two individuals' signatures on the policy and submits webpages indicating that these individuals were former officers of MLI. It is unclear based on the evidence whether these individuals were acting as officers of MLI or Tower when they signed the policies, however. Moreover, "[a] signature on one document does not rise to the level of 'manipulative control by the parent of its subsidiaries.'" *GEC US 1 LLC v. Frontier Renewables, LLC*, No. 16-CV-1276 YGR, 2016 WL 4677585, at *15 (N.D. Cal. Sept. 7, 2016) (citation omitted).

12

in question[.]" 28 U.S.C. § 1391(c)(2). Importantly, in a state like California with more than one district in which a corporate defendant is subject to personal jurisdiction, "such corporation shall be deemed to reside in any district in that [s]tate within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate [s]tate." 28 U.S.C. § 1391(d).

Plaintiff contends that this Court has general personal jurisdiction over Tower based on Tower's registration with the California Department of Insurance, pursuant to which Tower designated an agent for service of process in the state of California. Plaintiff points out that pursuant to California Insurance Code section 1602, "any process may be served on such agent in any action or other legal proceeding against the insurer, and such service *gives jurisdiction over the person of such insurer*." (Emphasis supplied.) In response, Tower argues that the relevant provisions of the insurance code do not necessarily subject registered insurers to general personal jurisdiction across the state. Rather, "the purpose of state statutes requiring the appointment by foreign corporations of agents upon whom process may be served is primarily to subject them to the jurisdiction of local courts in controversies *growing out of transactions within the State*." *Morris & Co. v. Skandinavia Ins. Co.*, 279 U.S. 405, 408-09 (1929) (emphasis supplied); *see also Robert Mitchell Furniture Co. v. Selden Breck Const. Co.*, 257 U.S. 213, 215 (1921) ("The purpose in requiring the appointment of such an agent is primarily to secure local jurisdiction in respect of business transacted within the State.").

The parties do not point to any controlling authorities interpreting section 1602 as it relates to the issues of personal jurisdiction and venue raised here. It is well-established, however, that a corporation typically is subject to general personal jurisdiction only in a forum where it is incorporated or where it maintains its principal place of business, neither which apply here. *Daimler*, 571 U.S. at 136. Although the Supreme Court has left open the possibility that in the "exceptional case," a corporation may be subject to general personal jurisdiction in a place other than these paradigmatic fora, the corporation's contacts with the alternative forum must be such that it is "essentially at home" there. *Id*. at 138-39, n.19. Further, to establish proper venue, section 1391(d) requires that the corporation have sufficient contacts with the district, not merely the state. As such, although section 1602 may subject Tower to the jurisdiction of this state's

13

courts, plaintiff must still demonstrate that this action arises out of Tower's transactions within this district.

It is undisputed that Mr. Pitt applied for, bought, and took delivery of the subject policy while living in Illinois. Plaintiff also does not refute Tower's assertion that it administered the policy and adjudicated plaintiff's claim for benefits outside of this district. In addition, plaintiff currently resides in San Diego, California.[7]

Rather, plaintiff avers that Tower's contacts with this district are sufficient based on its involvement in the drafting and implementation of sections 10113.71 and 10113.72 of the California Insurance Code. This argument, however, fails to persuade. With respect to Tower's legislative efforts, plaintiff emphasizes Tower's lobbying for the passage of the statues in Sacramento, which is in the Eastern District of California. Plaintiff's only specific allegation as to this district is that the statutes were drafted by a San Francisco-based attorney. That the statutes on which plaintiff bases her claims may have been drafted in part in this district fall short of establishing sufficient contacts to support a finding of personal jurisdiction, and accordingly, proper venue.

Under section 1391(b)(2), venue also is proper in a district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. Because, as explained, virtually none of the events giving rise to plaintiff's claims occurred in this district, there is no basis for venue under section 1391(b)(2) either.

Accordingly, the Court grants Tower's motion to dismiss for improper venue. The Court further finds that amendment would be futile. This case was filed almost a year and a half ago, with the amended complaint filed more than one year ago. The Court explained the deficiencies in Tower's venue argument at the hearing on the motion to dismiss, and thereafter, allowed plaintiff the opportunity to engage in jurisdictional discovery and to submit additional briefing.

---

[7] The agent listed on Tower's Department of Insurance registration page is based in Los Angeles, California, which is in the Central District of California.

14

Nevertheless, plaintiff has hung her hat on the limited arguments addressed above, all which are unavailing. As such, the Court grants Tower's motion to dismiss with prejudice.[8]

**IV. CONCLUSION**

For the foregoing reasons, MLG's motion to dismiss for lack of personal jurisdiction is **GRANTED WITH PREJUDICE**, MLI's motion to dismiss for lack of personal jurisdiction is **GRANTED WITH PREJUDICE**, and Tower's motion to dismiss for improper venue is **GRANTED WITH PREJUDICE**. The Clerk of Court is directed to close the file.

This Order terminates Docket Numbers 47, 48, 51, 52, 70, 101.

**IT IS SO ORDERED.**

Dated: April 1, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[8] In light of the Court's order, defendants' motion to stay initial disclosure deadlines and all discovery until a decision on the motions to dismiss (Dkt. No. 52) is **TERMINATED** as moot. Likewise, Tower's motion for change of venue (Dkt. No. 70) also is **TERMINATED** as moot.

15